William L. SOPER

v.

The UNITED STATES.

No. 514-79C.

United States Court of Claims.

May 5, 1982.

Albert F. Walser, Statesville, N. C., attorney of record, for plaintiff.

Nancy R. Sills, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant.

Before DAVIS, BENNETT and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case is before the court on motions for summary judgment. Plaintiff seeks back pay and restoration to his position as a civilian electronics engineer from which he was removed by the Department of the Army. The removal was sustained on appeal by the Merit Systems Protection Board. Upon examination of the MSPB opinion and the administrative record, and after briefing and oral argument, we uphold action taken. The essential facts are not in dispute.

Petitioner commenced employment in the federal service on June 8, 1959, as an electronics engineer. In mid- to late 1968, petitioner accepted an appointment in Germany from the Department of the Air Force, under the overseas rotation system of the Department of Defense. The terms of petitioner's overseas rotation were governed by Department of Defense Instruction 300.7, "Rotation of Employees from Foreign Areas and the Canal Zone," and we set out the pertinent sections here, with appropriate textual emphasis supplied:

I. PURPOSE

This Instruction provides for systems to assist employees serving overseas in returning to positions in the United States, to steadily reduce the number of personnel assigned to foreign areas for extended periods of time without any specific obligations to return, to prevent tying up positions in the United States indefinitely with reemployment rights *and to provide career opportunities to U.S. citizen employees to serve overseas.*

\*　　\*　　\*　　\*　　\*　　\*

IV. POLICY AND PROCEDURES

\*　　\*　　\*　　\*　　\*　　\*

C. *Employees hired in the United States for positions in foreign areas without reemployment rights.*

1. The policy of return from foreign areas in five (5) years shall be followed unless an exception for a specified additional period is approved, subject to the availability of a suitable position, with career or career-conditional employees appointed in the United States for service in a foreign area. *Since such an employee will not have reemployment rights, he shall be required to sign an agreement as a condition of employment specifying that he will accept a reassignment in any position in the United States, when offered, at the grade at which he was sent to the foreign area.* Every effort shall be made to place such employees in accordance with their preferences.

\*　　\*　　\*　　\*　　\*　　\*

E. *Employees in foreign areas serving under an Agreement to return.*

In the case of a transfer between Department of Defense Components overseas of an employee having statutory reemployment rights, the gaining organization shall obtain an agreement from the employee, as a condition of employment, stating that he will, within a specified period, accept reassignment to a position in the United States when offered by the gaining activity at the grade to which he had reemployment rights. *A similar agreement shall also be required for other employees serving under an obligation to accept reassignment to the United States.*

On August 5, 1968, petitioner signed the agreement required by section IV(C)(1), quoted above. It provided for a 5-year limit on his overseas employment, an acknowledgment that placement assistance for reemployment in the United States would be provided, and a warning that failure to return to the United States at the end of the 5-year period would result in

separation from overseas employment. Petitioner clearly was to return to the United States, to a job found either by him or by the government's reemployment assistance service, if he was to remain in federal employment.

On September 11, 1968, and on October 11, 1968, petitioner signed two more, very similar, agreements.

On December 19, 1969, petitioner transferred to the Department of the Army and executed the agreement called for in section IV(E) of the DOD Instruction. This agreement restricted his overseas rotation to just 2 more years, to December 20, 1971, and contained the warning that failure to return to the United States would result in termination. At the end of petitioner's 2-year period, however, his employment was extended. This time, though, petitioner refused to sign the proper rotation agreement. Petitioner thought that the Department of Defense's intervening change in reemployment assistance, from the Centralized Referral System in effect when he began his overseas rotation to a Priority Placement Program (PPP), decreased his chances of finding a U.S. job that would be satisfactory to him. By not signing the new agreement, petitioner apparently believed that the PPP would not apply to him.

Petitioner was continued in overseas employment until September 15, 1975. In the meantime, petitioner was unsuccessful in his own efforts to find a U.S. job to return to, and he turned down as unsatisfactory a job that was offered to him by the Army despite his refusal to join the PPP. On April 22, 1976, petitioner was given advance notice of proposed removal, for failure to obtain U.S. employment at the time of the termination of his overseas rotation and for failure to register with the PPP, and he was removed on June 25, 1976.

Petitioner appealed his removal to the Federal Employee Appeals Authority (FEAA) (predecessor to the MSPB) on July 9, 1976. The FEAA looked only at documentary evidence, due to some unspecified disagreement between petitioner's representative and the hearing officer, and upheld the removal.

Appeal here was initiated but then suspended by agreement of the parties, and the case was reopened, reversed and remanded to the MSPB. Petitioner declined to call witnesses before the MSPB but made a statement under oath and offered two additional exhibits. The MSPB decided on June 5, 1980, on the basis of the FEAA record and the extra materials also to uphold removal (decision No. DC752B8020029). The MSPB's conclusion was that:

appellant accepted overseas employment with the agency knowing that his tour was limited to five (5) years, plus possible extensions for the good of the agency; that he was counselled regarding his future employment in the United States at the conclusion of his overseas tour; that he declined the agency's offered assistance in securing a return position in the United States by failing to register in the PPP; that he failed on his own to secure a return position of employment in the United States; and that he did all of the above with the knowledge that he could be removed if he did not comply with the agency's overseas rotation policies. Accordingly, we find that the appellant's removal was warranted to promote the efficiency of the service, since he could not remain as an employee in Europe and there was no position to which he could return in the United States.

■ Petitioner contests this decision on a number of grounds. Foremost, petitioner contends that his duties with respect to his federal employment are defined and circumscribed by the course of his signing or refusing to sign the rotation agreements. In particular, he asserts: (1) that he had no obligation to return because all of his agreements that called for it had expired; (2) that his refusal to sign an agreement providing for his inclusion in the PPP meant that a continuation of the old agreement providing for assistance by the Centralized Referral System was implied; (3) that the government's attempt to modify the terms of his reemployment assistance, by switching to the PPP, was without con-

sideration; and (4) that his continued employment after his refusal to sign an agreement meant that the government waived its requirement that he return. By these contentions, petitioner misconstrues the nature of his employment with the federal government and misinterprets the significance of the rotation agreements. Petitioner's relationship to the government was not contractual, and the common-law principles of contract law do not apply. *Brown v. United States*, Ct.Cl., 652 F.2d 69, No. 9–80C (1981); *Leland v. United States*, 213 Ct.Cl. 732, 553 F.2d 105 (1977), and cases cited therein. The terms of petitioner's employment were governed by Department of Defense Instruction 300.7, quoted above, and it is clear that the rotation agreements were only to fulfill a notice function, to warn prospective overseas employees of the restrictions on their employment. Petitioner's employment did not depend on his rotation agreements, and so the course of his experience with them is not significant. Petitioner was to have notice of his obligation to return to the United States after the termination of his rotation, and he received that notice. His refusal to sign the last agreement was just as effective for that purpose as signing it would have been.

Petitioner's next most serious contention is that both the FEAA and the MSPB relied on his failure to register with the PPP as a ground for dismissal despite the fact that the Army dropped that failure as a specific ground for proceeding against him. Here again, however, petitioner misconstrues what transpired. Petitioner was under an obligation to return to the United States when his rotation was over, and he was removed for his failure to have found a position to which to return. Petitioner could no longer remain in federal service because he could not remain in Europe and had no job at home. Petitioner is correct in that he had no specific obligation to register with the PPP, because he could have found a United States job on his own, but it is just as true that both the FEAA and the MSPB properly cited his refusal to work with the PPP as part of the documentation of the fact that petitioner had not fulfilled his obligation to return. Petitioner was not removed for failing to register with the PPP, but that failure was nevertheless an important and contributing event in his failure to secure a job in the United States.

Petitioner also alleges that there was a procedural error on the part of the MSPB in not making witnesses available. Apparently petitioner had omitted to request witnesses and the MSPB had assumed that he did not require them. The answer to this allegation is that both the MSPB hearing officer and the government's representative made every effort to accommodate petitioner and that petitioner declined such help. At the MSPB hearing the government representative moved to continue the hearing and stated his willingness to have the agency call all witnesses who could contribute to the record. The appeals officer indicated his agreement to the motion. However, plaintiff opposed it on the grounds of "inconvenience" so the appeals officer, since the motion was for plaintiff's benefit and he did not want it, denied continuance.

Further, petitioner contends that 10 U.S.C. § 1586 (1976) grants him reemployment rights, and that he was not on overseas rotation without such rights. Defendant responds quite correctly that petitioner did not raise this point before the MSPB and should not be allowed to raise it now. *Haynes v. United States*, 190 Ct.Cl. 9, 418 F.2d 1380 (1969). Moreover, petitioner has not alleged sufficient facts to show that he was "assigned at the request of the department concerned" to bring him under the statute. 10 U.S.C. § 1586(b) (1976).

■ We have examined all of petitioner's several other contentions and find them to be without merit. There were no procedural defects in the removal process. The MSPB decision is supported by substantial evidence and is not arbitrary or capricious. It is legally correct.

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied. The petition is dismissed.